IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-251-BO-KS

GIAN SPELLS,                         )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )          O R D E R
                                     )
WAKE COUNTY BOARD                    )
OF EDUCATION,                        )
                                     )
          Defendant.                 )

This matter comes before the Court on defendant's motion to dismiss for failure to state a claim. [DE 41]. Plaintiff has responded [DE 46] and defendant has replied [DE 48]. In this posture, the motion is ripe for ruling. For the following reasons, defendant's motion to dismiss is granted.

BACKGROUND

Plaintiff, proceeding in this action pro se, alleges the following in his amended complaint. [DE 21]; [DE 21-2]. Plaintiff "was hired by the Wake County Board of Education on July 1, 2020, as a Webster Center Multipurpose Technician[.]" [DE 21-2, ¶ 1.1]. At the time he was hired, plaintiff's supervisor "informed him that the position was classified as hourly at a rate of $15 per hour." *Id.* at ¶ 2.1. More than two years after he was hired, while reviewing payroll records, he realized he "was effectively paid a flat salary rather than for actual hours worked, creating unpaid time that was difficult to track." *Id.* at ¶ 5.1. He confirmed his classification was "Salaried FLSA Non-Exempt." *Id.* at ¶ 8.1.

Around this time, in August of 2022, plaintiff raised concerns about his compensation and work responsibilities with human resources. *Id.* at ¶ 3.2. He complained of "short checks" to his supervisors. *Id.* at ¶ 5.2. He also complained that the inequitable application of his department's

telework policy forced him to take on elevated responsibilities, as he was routinely "the only in-person employee" available. *Id.* at ¶¶ 6.2–6.4. Following his complaints, some of his previously assigned duties were removed. *Id.* at ¶ 8.2. "Between March and May 2023, the Plaintiff submitted multiple formal reports raising concerns regarding" his workplace conditions, staffing, disproportionate workload burdens, and job classification and compensation discrepancies. *Id.* at ¶ 11.1. His concerns were dismissed without a formal investigation. *Id.* at ¶ 11.2. Throughout the amended complaint, plaintiff generally alleges that white employees were promoted, but employees of other races were not. *See id.* at ¶¶ 11.4–11.5, 12.3, 14.2–14.3.

In May 2023, plaintiff attended a meeting to discuss issues with his performance. *Id.* at ¶ 13.1. In June 2023, he was issued a "formal disciplinary write up" reflecting those concerns. *Id.* He submitted a "formal rebuttal and response" which went unacknowledged. *Id.* at ¶ 13.6. On January 9, 2024, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). [DE 21-6]; [DE 21-2, ¶ 191]. Plaintiff acknowledges in his EEOC charge that he "sometimes came to work late and left early" and was therefore placed on "probation." [DE 21-6]. During his probation, he was required to sign in and out of work each day and was "subjected to intense scrutiny for minor badge time discrepancies." [DE 21-2, ¶¶ 13.5, 28.2].

"On February 21, 2024, the Plaintiff submitted a formal report outlining workplace conditions, departmental policy violations, and unequal enforcement of expectations" to human resources personnel. *Id.* at ¶ 19.3. He alleges there had been a six-month delay in initiating this investigation, *id.* at ¶ 19.5, and seemingly maintains that the investigation was ultimately biased. *Id.* at ¶ 38. In spring of 2024, plaintiff followed up on his request for a compensation review, but the review was not completed to his satisfaction. *Id.* at ¶¶ 20.1, 20.5, 21.1, 87.1. He alleges he "remains undercompensated for duties that clearly exceeded his classification." *Id.* at ¶ 35.2.

2

On April 17, 2025, human resources reclassified plaintiff's position from "Webster Center Multipurpose Technician" to "Professional Learning Assistant." *Id.* at ¶ 86.1. Although a salary increase accompanied the new title, *id.* at ¶ 112.3, plaintiff argued that the new title "failed to accurately reflect the technical scope of his job responsibilities[.]" *Id.* at ¶ 88.1. Plaintiff alleges his employment was terminated on June 4, 2025, and that the "write-up" issued in June 2023 served as "part of the termination rationale[.]" *Id.* at ¶ 107.4.

Plaintiff purports to assert forty-four counts for relief in his amended complaint. From plaintiff's summary of his claims [DE 21-4], the Court discerns several causes of action arising under federal law: Title VII, the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1983, and the Equal Pay Act (EPA). As the Court will dismiss all the federal claims asserted in this case, it will also decline to exercise supplemental jurisdiction over the state law claims.

DISCUSSION

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

3

at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## I. Title VII Claims

"Title VII gives initial enforcement responsibility to the EEOC. An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005).

> Even after a plaintiff has exhausted his administrative remedies, the administrative framework plays a substantial role in focusing the formal litigation it precedes. If 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'

*Id.* at 509 (quoting *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

In his EEOC charge, plaintiff complained that he was paid "only half of the yearly salary of [similar] employees who are mostly Caucasian." [DE 21-6]. His employer wrote him up and placed him on probation "allegedly because [he] did not respond to emails within forty-eight hours, did not carry a walkie-talkie, came into work late and left early and did not share google calendar room setup details with others on [his] team." *Id.* The charge then explains that plaintiff responded to "the overwhelming majority of the emails within a forty eight hour time period, the walkie talkie . . . did not work . . . and while [plaintiff] sometimes came to work late and left early, [he] still on those days worked the necessary number of daily hours." *Id.* He also claimed his manager's supervisor harassed him and stated that white women "do not get enough promotions." *Id.* For purposes of his Title VII claims, plaintiff can rely only on allegations in his complaint that are reasonably related to those in his EEOC charge.

4

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show "(1) he is a member of a protected class; (2) he has satisfactory job performance; (3) he was subjected to adverse employment action; and (4) similarly situated employees outside his class received more favorable treatment." *Cottman v. Rubin*, 35 F. App'x 53, 55 (4th Cir. 2002). To prevail on a Title VII retaliation claim, a plaintiff must show "(1) he engaged in a protected activity; (2) his employer took adverse employment action against him; and (3) a sufficient causal connection existed between the first two elements." *Cottman*, 35 F. App'x at 55. "A plaintiff is not required to plead a prima facie case of discrimination under Title VII to survive a motion to dismiss. Instead, a plaintiff must allege sufficient facts 'to satisfy the elements of a cause of action created by [the applicable] statute.'" *Krehbiel v. BrightKey, Inc.*, No. 22-1385, 2023 WL 7984747, at *1 (4th Cir. Nov. 17, 2023) (internal citation to *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015) omitted).

"An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (cleaned up, citation omitted). "Where a plaintiff pleads that a negative performance review constitutes an adverse employment action he must explain and quantify how that review might impact his current pay or employment opportunities." *Ramirez-Rodriguez v. Wal-Mart Stores E., L.P.*, No. 5:12-CV-585, 2013 WL 3356566, at *3 (E.D.N.C. July 3, 2013) (citing *Holland*, 487 F.3d at 219). While plaintiff alleges a probation period accompanied his June 2023 write up, he does not explain how it adversely affected the terms, conditions, or benefits of his employment, outside of being subjected to scrutiny and having to sign in and out each day. [DE 21-2, ¶¶ 13.1, 13.5]. The write up and probation period, without further allegations regarding his pay or employment opportunities, do not constitute adverse employment actions.

The Court can discern no other potentially adverse action until plaintiff's termination—after the write up and probation period, plaintiff was promoted and his salary increased. *Id.* at ¶ 112.3.

Because plaintiff complained of the write up and probation period in his EEOC charge [DE 21-6], and because he alleges in his amended complaint that his employer relied on the write up to justify his termination [DE 21-2, ¶ 107.4], the Court generously construes the termination as within the scope of his EEOC charge. Nevertheless, even if his termination serves as an adverse action, he fails to state a Title VII discrimination or retaliation claim. To make out a Title VII disparate treatment claim, plaintiff would have to plausibly allege facts indicating "he has satisfactory job performance[.]" *See Cottman*, 35 F. App'x at 55. In his EEOC charge, however, he admits he "sometimes came to work late and left early," and outside of the negative feedback regarding his handling of his Google calendar setup, otherwise acknowledges there is truth to the criticisms that prompted the write up and probation period. [DE 21-6]. Furthermore, his factual allegations that other Caucasian employees were treated more favorably are conclusory. He identifies certain employees who received promotions that may not have been motivated by merit [DE 21-2, ¶¶ 11.2–11.3] but does not allege that he sought or applied for those positions—in any event, he alleges he was promoted in April of 2025. *Id.* at ¶ 112.3.

As for his Title VII retaliation claim, there is no plausible allegation that any protected activity motivated his termination. A plaintiff can establish the causation element of a Title VII retaliation claim "[1] by showing that the adverse act bears sufficient temporal proximity to the protected activity, or [2] by showing the existence of facts that suggest that the adverse action occurred because of the protected activity, or a combination of the two." *Clark v. Sampson Reg'l Med. Ctr., Inc.*, 706 F. Supp. 3d 543, 556 (E.D.N.C. 2023). Plaintiff was terminated shortly after filing this civil action, but does not in his amended complaint allege that his employer knew about

6

the suit. Defendant was not served until months after plaintiff alleges he was terminated. [DE 45]. Plaintiff filed his EEOC charge in January 2024. Any inference that the filing of plaintiff's EEOC charge motivated his termination is weakened by the lack of temporal proximity between the two and the fact that he was promoted in the meantime.

Plaintiff also appears to assert a Title VII claim for hostile work environment. [DE 21-4]. To assert a hostile work environment claim, plaintiff must plausibly allege "(1) unwelcome conduct, (2) based on her race [or another protected status], that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to . . . her employer." *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020) (citation omitted). Plaintiff alleges that being excluded from the opportunity to telework "despite . . . performing customer-facing duties" contributed to a hostile work environment [DE 21-2, ¶ 6.4], as did a coworker's appearance at his workstation to ask if he had reviewed her email. *Id.* at ¶¶ 80.1, 84.1.

The most convincing allegation regarding the hostility of the workplace—that plaintiff was once located by a police or security officer who escorted him to a meeting which plaintiff had scheduled with human resources—also falls short of "severe or pervasive" conduct. *Id.* at ¶¶ 21.1, 21.3–21.5, 64.2. The amended complaint fails to state a hostile work environment claim because it contains no plausible allegation that plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

7

## II. FLSA Claims

"[T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Plaintiff alleges he "reviewed payroll records and discovered inconsistencies between his timesheets and monthly earning statements." [DE 21-1, ¶5.1]. He was "effectively paid a flat salary rather than for actual hours worked, creating unpaid time that was difficult to track." *Id.* While he does allege he "remains undercompensated for duties that clearly exceeded his classification[,]" *id.* at ¶ 35.2, he does not allege the duties he performed outside his classification required him to work more than 40 hours in any given week.

"[P]laintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay." *Hall*, 846 F.3d at 777. "A plaintiff may meet this initial standard by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* (emphasis and internal quotation marks omitted). Even if plaintiff had alleged he worked uncompensated overtime, "allegations are insufficient to survive a motion to dismiss where plaintiff has done no more 'than merely allege' that at some point during roughly the last four years employees of defendants did not receive the applicable minimum hourly rate and defendants did not properly maintain records." *Acosta v. Ararat Imp. & Exp. Co., LLC*, 378 F. Supp. 3d 443, 447 (E.D.N.C. 2019). Plaintiff follows an impermissible pleading form similar to that described in *Acosta*. Accordingly, he fails to state an overtime claim under the FLSA.

8

### III. Equal Pay Act

The Equal Pay Act makes it unlawful to discriminate "between employees on the basis of sex[.]" 29 U.S.C. § 206(d). "To state a claim under the Equal Pay Act, Plaintiff must allege that: (1) an employer paid higher wages to an employee of the opposite sex who (2) performed equal work on jobs requiring equal skill, effort, and responsibility, (3) under similar working conditions." *Harris v. Hargo LLC*, 2025 U.S. Dist. LEXIS 107936, *8-9. Plaintiff's allegation that his supervisor once said "white women don't receive enough promotions" [DE 21-2, ¶ 14.1] is insufficient to state an EPA claim. There is no allegation of any higher paid employee of the opposite gender who performed equal work under similar conditions.

### IV. § 1983

Under *Monell v. New York City Dept. of Soc. Servs.*, a local government can be held liable under 42 U.S.C. § 1983 for its unconstitutional policies. 436 U.S. 658, 690–94 (1978). Liability is limited, however, and is not available on a *respondeat superior* theory. *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). Municipal liability results only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotations omitted). Plaintiff fails to allege any such basis for municipal liability. As defendant puts it:

> Plaintiff asserts that various school system employees, ranging from those serving in the Office of Professional Learning to staff in Human Resources to senior administrators Dr. Clinton Robinson and David Neter, failed to respond

9

appropriately to nebulous and conclusory assertions of discriminatory treatment of himself and others in the workplace, as well as other workplace grievances, over a period of approximately two years, and that this amounted to denial of due process. But Plaintiff never asserts facts sufficient to establish that such alleged conduct occurred pursuant to any of the "four ways" described in *Lytle*. Accordingly, Plaintiff's purported Section 1983 claims must fail.

[DE 42, p. 17].

Having dismissed the federal claims asserted in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [DE 41] is GRANTED. Plaintiff's motion for an injunction [DE 35] is DENIED as MOOT. Defendant's motion for an extension of time to file a response [DE 44] is DENIED as MOOT. Plaintiff's motion for leave to file a sur reply [DE 50] is DENIED as MOOT. The Clerk is directed to enter judgment in defendant's favor and close the case.

SO ORDERED, this 14 day of July, 2026.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE